Cite as 2023 Ark. App. 51

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. E-22-393

| | | |
|---|---|---|
| DANIEL CARMAN | | Opinion Delivered February 8, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE ARKANSAS |
| V. | | BOARD OF REVIEW |
| | | [NO. 2022-BR-00728] |
| DIRECTOR, DIVISION OF WORKFORCE SERVICES; AND DEWAYNE HIGGINS TRUCKING CO., INC. | | |
| | | AFFIRMED IN PART; REMANDED IN |
| | APPELLEES | PART |

**WENDY SCHOLTENS WOOD, Judge**

Daniel Carman appeals the Arkansas Board of Review's (the "Board's") decision that he is liable for repaying unemployment-compensation benefits in the amount of $14,496. He argues that substantial evidence does not support the Board's finding that he is not entitled to a waiver of repayment of the benefits because the evidence shows that the recovery of the overpayment imposes an undue hardship on him and that the overpayment is not attributable to him but to the Division. We affirm in part and remand in part.

Carman was an over-the-road truck driver when the COVID-19 pandemic began. He applied for regular unemployment benefits on April 6, 2020, citing his separation from work as "Laid Off: Lack of Work." Regarding eligibility, he stated that he could begin work

immediately and that he had not refused any job since he became unemployed.[1] His employer responded to the claim, alleging that Carman did not want to work due to the coronavirus. The Arkansas Division of Workforce Services (the "Division") began paying benefits to Carman for the week ending April 11 and continued paying them through July 25, 2020.

Over a year later in June 2021, Carman completed an able-and-available statement providing that he had not been able and available for work from April 20 through July 30, 2020, due to his "COPD and heart trouble" and stating that he would not have reported to work during this period if work had been available. He explained that he had been unable to work due to the pandemic and the CDC's warning that individuals with medical conditions should "self-quarantine."

On October 19, 2021, the Division issued a notice of agency determination disqualifying Carman from receiving unemployment benefits under Arkansas Code Annotated section 11-10-507(3)(A) on the ground that he was not available for suitable work due to personal reasons. He appealed the decision to the Appeal Tribunal (the "Tribunal"), which affirmed the Division's determination in a decision issued on November 10. The Tribunal found that Carman was unavailable to work—and consequently ineligible for benefits—from April 5 through August 1, 2020, "due to having personal health issues and could not be exposed to COVID-19." The Tribunal also found that Carman's employer

---

[1]One of the requirements to be eligible to receive benefits is that the worker be "available for work." Ark. Code Ann. § 11-10-507(3)(A) (Supp. 2021).

2

failed to provide Carman proper safety items to protect him from COVID-19 while performing his job duties.[2]

On November 24, 2021, as a result of its determination disqualifying Carman from receiving unemployment benefits under section 11-10-507(3)(A), the Division issued a notice of nonfraud overpayment covering the benefits paid to Carman for the weeks ending April 11 through July 25, 2020, and it determined that he was liable for repayment of $14,496. This amount included weekly benefits of $906: $306 in state unemployment compensation and $600 in Federal Pandemic Unemployment Compensation ("FPUC").[3] As authority for its decision, the Division cited Arkansas Code Annotated section 11-10-532(b)(1) (Supp. 2021), which provides in pertinent part that if the director "finds that a person has received an amount as benefits under this chapter to which he or she was not entitled by reasons other than fraud, willful misrepresentation, or willful nondisclosure of facts, the person is liable to repay the amount[.]"

Carman appealed the Division's notice to the Tribunal, which conducted a telephone hearing on December 29, 2021. Carman testified at the hearing that he filed a claim and

---

[2]Carman appealed the Tribunal decision, and on June 2, 2022, the Board affirmed and adopted the Tribunal decision as its own. Carman has separately appealed this decision, which we also hand down today. *Carman v. Dir.*, 2023 Ark. App. 50.

[3]FPUC was a fund created by the federal government during the COVID-19 pandemic to increase unemployment benefits that were paid by the state. 15 U.S.C. § 9023; *see generally* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, 134 Stat. 281 (2020) (codified at 15 U.S.C. § 9021 to § 9034).

was subsequently paid unemployment benefits for the weeks ending April 11 through July 25, 2020. He testified that he should not be liable for repayment of these benefits because he has a medical condition that put him at risk during the pandemic and because his employer did not provide any safety equipment, including masks, gloves, or hand sanitizer. He then gave detailed testimony regarding his family finances. Following the hearing, the Tribunal affirmed the Division's determination and issued a decision on January 3, 2022, specifically finding that Carman received benefits for which the Division later determined he was disqualified and that the overpayment was a result of Carman's disqualification and not attributable to Division error. Because of its determination of no Division error, the Tribunal found that principles of equity and good conscience could not be applied.

Carman appealed the Tribunal's decision to the Board, which affirmed and concluded with the following paragraph:

> The claimant's overpayment was caused by the determination finding that he was not available for suitable work at the time he received benefits. The claimant appealed that determination, and the Tribunal issued a decision in Appeal No. 2021-AT-21664 on November 10, 2021, affirming the determination. The claimant appealed that decision to the Board, and the Board affirmed the Tribunal's decision in Appeal No. 2021-BR-05605. The determination that resulted in the overpayment is still in effect. The overpayment was not received as a direct result of an error by the Division, and as such an equity and good conscience review is not warranted. Therefore, the decision of the Appeal Tribunal in Appeal No. 2022-BR-00728 is affirmed on finding that the claimant is liable to repay benefits.

Carman has appealed the Board's decision arguing that the Board's finding that he is not entitled to a waiver of repayment of benefits is not supported by substantial evidence because

repayment will impose an undue hardship on him and because the overpayment is not attributable to him but to the Division.

Our standard of review in unemployment-insurance cases is well settled. We do not conduct de novo reviews in appeals from the Board. *Keener v. Dir.*, 2021 Ark. App. 88, at 1, 618 S.W.3d 446, 448. Instead, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings of fact. *Id.*, 618 S.W.3d at 448. We accept the Board's findings of fact as conclusive if supported by substantial evidence, which is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.*, 618 S.W.3d at 448. Even when there is evidence on which the Board might have reached a different decision, our scope of judicial review is limited to a determination of whether the Board could have reasonably reached the decision rendered on the basis of the evidence presented. *Id.* at 1–2, 618 S.W.3d at 448. We defer credibility calls to the Board as the finder of fact as well as the weight to be accorded to testimony presented to the Board. *Id.* at 2, 618 S.W.3d at 448. While our role in these cases is limited, we are not here to merely ratify the decision of the Board. *Id.*, 618 S.W.3d at 448. Instead, our role is to ensure that the standard of review has been met. *Id.*, 618 S.W.3d at 448.

Carman argues on appeal that substantial evidence does not support the Board's finding that he is not entitled to a waiver of repayment of the overpayment of unemployment benefits that he received. Specifically, he contends that recovery of the overpayment will impose an undue hardship on him because he relied on the benefit payments to stay current

on his financial obligations during the global pandemic and that if he is forced to repay the benefits, his monthly expenses would quickly overcome his monthly income. He also contends that the overpayment was never attributed to him but instead to the Division's error.

The Division disqualified Carman from receiving unemployment benefits because he was unavailable to work. To be eligible to receive unemployment benefits under Arkansas law, an insured worker must be unemployed, physically and mentally able to perform suitable work, and "available for the work." Ark. Code Ann. § 11-10-507(3)(A). In Carman's application for benefits, he stated that he could begin work immediately. After he received the benefits, in an able-and-available statement completed on June 3, 2021, Carman stated that he had not been able and available for work from April 20 through July 30, 2020, and he claimed that he would not have reported to work during this period if work had been available. Carman testified at the eligibility hearing that he was not available to work during the relevant time period. The Tribunal affirmed the Division's determination that Carman was unavailable to work and not eligible for unemployment benefits, and the Board affirmed and adopted the Tribunal's decision. We affirmed Carman's appeal from the Board's decision in *Carman v. Director*, 2023 Ark. App. ___, handed down today.

In the instant appeal, the Board found that the overpayment was caused by the Division's determination that Carman was ineligible for unemployment benefits because he was not available for suitable work at the time he received benefits and further found that the overpayment was not the Division's error. The record reflects that Carman's

6

application indicated he was eligible to receive benefits. A year later, after having received the benefits, he told the Division that he had been unavailable for work during that time, making him ineligible. Therefore, we hold that substantial evidence supports the Board's finding that the overpayment was not the direct result of an error by the Division.

This fact is critical because Arkansas law provides that the director may waive the requirement that an overpayment of state unemployment benefits be repaid if the director "finds that the overpayment was received as a direct result of an error by the Division of Workforce Services *and* that its recovery would be against equity and good conscience." Ark. Code Ann. § 11-10-532(b)(2)(A) (Supp. 2021) (emphasis added). To qualify for a waiver of repayment of state benefits, the statute requires there be both Division error and that the recovery would be against equity and good conscience. Because the overpayment was not the result of an error by the Division in this case, Carman's arguments of hardship, or equity and good conscience, do not apply. Therefore, we affirm the Board's decision requiring Carman to repay $4,896 in state unemployment benefits.

Carman also received federal unemployment benefits—FPUC benefits. Under the CARES Act, FPUC benefits were paid by the federal government to states that entered into an agreement with the Secretary of Labor, which Arkansas did. 15 U.S.C. § 9023(a), (b)(1). The states then distributed the payments to individuals "otherwise entitled under the State law to receive" regular unemployment compensation. 15 U.S.C. § 9023(b)(1), (b)(3). The benefits Carman has been ordered to repay in this case include $600 in weekly FPUC benefits, for a total of $9,600. The law governing these FPUC benefits provides that the State

7

shall recover those funds inappropriately received by any individual "in accordance with the same procedures as apply to the recovery of overpayments of regular unemployment benefits paid by the State." 15 U.S.C. § 9023(f)(3)(A). However, the federal law governing a state's authority to waive repayment of these funds differs from Arkansas law:

(2) Repayment

In the case of individuals who have received amounts of Federal Pandemic Unemployment Compensation . . . to which they were not entitled, the State shall require such individuals to repay the amounts of such Federal Pandemic Unemployment Compensation . . . to the State agency, except that the State agency may waive such repayment if it determines that--

(A) the payment of such Federal Pandemic Unemployment Compensation . . . was without fault on the part of any such individual; and

(B) such repayment would be contrary to equity and good conscience.

15 U.S.C. § 9023(f)(2). Notably, there is no requirement for a finding that the overpayment was a result of Division error, but the statute does require a determination that the payment was without fault on the part of the worker.

Here, Carman argued that he should not be required to repay the benefits because he had a medical condition putting him at a high risk for negative health consequences during the pandemic and his employer provided no safety equipment to alleviate his concerns. The Board found that the overpayment was not received as a direct result of an error by the Division and thus that a review of equity and good conscience was not warranted. While this includes findings sufficient to review whether the waiver of repayment of the overpayment of state unemployment benefits is supported by substantial evidence

under Arkansas law, there are a lack of findings sufficient to review the issue of waiver of repayment of the overpayment of FPUC benefits under federal law.

If adequate findings of fact are not made on the issue presented, we remand to the Board for it to provide findings of fact and conclusions of law upon which to perform proper appellate review. *Patterson v. Dir.*, 2014 Ark. App. 113, at 5. Accordingly, we remand for the Board to reconsider Carman's request for a waiver of the overpayment determination with regard to the FPUC funds. Specifically, we remand for the Board to make findings of fact and conclusions of law regarding whether the FPUC payments were made without the fault of Carman and whether repayment would be contrary to equity and good conscience.

Affirmed in part; remanded in part.

GRUBER and HIXSON, JJ., agree.

*DeeAnna Weimar*, for appellant.

*Cynthia L. Uhrynowycz*, Associate General Counsel, for appellee director, Division of Workforce Services.